CAROLINE VOSE BROWN *vs.* FRANK COLE.

York.   Opoinion October 2, 1916.

*Effect of adjoining land owners agreeing upon a certain line or fence as a division line and occupying up to that line for twenty years.*
*Necessary form in making up bills of exceptions.*

1.  Where a bill of exceptions did not contain a requested instruction, did not state whether the court ruled upon it, or what instructions were given the jury in regard to the matter, it cannot be considered, since a bill of exceptions must show what the issue was, set forth enough to enable the court to determine that the points raised are material, and that the rulings excepted to are both erroneous and prejudicial.

2.  On writ of entry, where record title was in the plaintiff, and defendant filed a disclaimer as to a portion of the land claimed, evidence held sufficient to justify a finding that the defendant and his predecessor in title had been in open, exclusive, adverse possession of the remainder of the property under a claim of right for more than twenty years prior to an interruption by the building of a fence.

Writ of entry.   Plea of general issue filed together with brief statement claiming title to part of premises demanded in writ and disclaiming as to another certain part beyond a given line.   Verdict for defendant.   Plaintiff filed motion for new trial and exceptions to refusal of presiding Justice to give certain requested instructions. Motion overruled.   Exceptions not considered.

Case stated in opinion.

*Mathews & Stevens, and William H. Stone,* for plaintiff.

*N. B. & T. B. Walker,* for defendant.

SITTING: CORNISH, KING, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J. This is a writ of entry brought to recover possession of a lot of land at Biddeford Pool. The defendant filed a disclaimer to all of the land that the plaintiff set out in her writ that was north of what was claimed as a conventional line, agreed upon between the parties who owned the premises before he purchased them, and he also disclaimed to all land included in the plaintiff's declaration that was east of what he says was at one time a stone wall. The verdict was for the defendant, and the plaintiff brings the case to this court upon a motion for a new trial as against law and evidence, and upon exceptions to the refusal of the presiding Justice to give a requested instruction. The exception can not be considered. As said by the court in *Jones* v. *Jones,* 101 Maine, 450: "Many times the court has reiterated the rule that an excepting party, if he would obtain any benefit from his exceptions, must set forth enough in the bill of exceptions to enable the court to determine that the points raised are material and that the rulings excepted to are both erroneous and prejudicial. The bill of exceptions must show what the issue was, and how the excepting party was aggrieved. . . . It is not enough that the court can find all these characteristics by studying the report of the evidence in support of the motion for a new trial, when it accompanies a bill of exceptions. The bill must be strong enough to stand alone. The court, in considering the exceptions, cannot travel outside of the bill itself." The requested instruction called for the construction by the court of a deed that is not a part of the bill of exceptions, and is not set forth therein, and we cannot tell from the bill of exceptions whether the requested instruction was right or wrong. We cannot tell from the bill of exceptions whether the court ruled upon it, or what instructions he gave the jury in regard to the words in the deed to which our attention is called in the exceptions. He may have ruled practically as the plaintiff claims that he should, and may have given instructions to the jury in practically the same language as used in the request. We can not pass upon it and say that the court was not justified in refusing to instruct the jury as requested without an examination of the deed, and so much of his instructions to the jury as referred to the point raised. See the

recent case of *Borders* v. *Boston and Maine Railroad,* in which the rule is stated and the authorities in support of it cited.

At the trial the presiding Justice ruled that the record title to the disclaimed premises was in the plaintiff, and that the defendant must base his claim, if any, to the title thereof, on the ground of adverse possession. No exception was taken to this ruling, and the case was tried upon the question of adverse possession to the strip of land in controversy. The only question is, was there sufficient evidence of adverse possession of the land by the defendant, and his predecessors in title, to authorize the verdict? The defendant introduced two witnesses who testified that in 1890 there was a dispute between Mr. Brown, the husband of the plaintiff under whom she claims title by will, and Charles S. Cleaves, under whom the defendant claims title, who owned the land adjoining the Brown lot as to the line on the north side. There was a good deal of feeling, and the parties went out upon the land, walked up and down and looked it over, and that Mr. Brown said, "Well I don't claim to own any of your land, but I do claim to own the land this side of the stable, that is, north of the stable," and he said, "Your land runs over here, you straighten that line out, make a straight line down there, that will satisfy me," and that Mr. Cleaves said, "I think I own the land, but in order to satisfy you and save further trouble I will straighten it out," and he did so. One of the witnesses, a son of Mr. Cleaves, testified that he was sent to the barn to obtain an iron rod and stone-hammer, and in the presence of both owners and by their direction he drove the iron rod at the corner of their land, as agreed upon, and it was agreed that the line should run from that iron rod to a post on the north side. These two witnesses identify the line as claimed by the defendant as the line agreed upon at that time. The iron hub was identified by them, and there is other testimony that the iron hub was there at the time of the trial, and testimony that the defendant was shown the iron hub and the post at the time he purchased his land as the true line, and that there was a wire fence from the iron hub to the post which is shown by a photograph taken at about the time he purchased. The testimony as to the establishment of the line as set forth above is only attempted to be impeached by the testimony of a witness who

claims that in 1901 or 1902 Mr. Cleaves and Mr. Brown discussed the line in his presence, and that Mr. Cleaves stated, in substance, that he knew that his buildings were on the plaintiff's land, and agreed that he was not claiming and would not claim the land, but would occupy it as the land of Mr. Brown, if he would allow him to do so, and Mr. Brown agreed that, if he was not claiming to hold it adversely, he might continue to occupy it. The defendant claimed that no such conversation took place, and that, even if it had, it proved nothing because the deeds introduced in the case showed that, at that time, Mr. Cleaves had conveyed away his interest in the land; that there is no pretense that he had authority to bind the then owner; that the fact that he did not own the land at that time shows that he did not make the statement testified to. At the time of the trial both Mr. Brown and Mr. Cleaves were deceased, and the place of the conversation was miles from the land. In 1888, before the agreement as to the line as testified to above, Mr. Cleaves erected a house and an ell upon the land, and a stable or lean-to or some other outbuildings. The testimony tends to show that he occupied the lot, including the land up to the conventional line agreed upon, and that he erected a stable or barn close to the stone wall upon the east side, and the land was so occupied from that time to his sale of it to Mercy C. Cleaves in March, 1891, and continued to be so occupied until she conveyed to Frank Cole August 31, 1894. After Mr. Cole's purchase of it he made various additions to the buildings, and built a new stable, or barn, and was never interfered with or the possession of the property claimed by the Browns until 1913, when, Mr. Brown having died, the property descended to his widow by will, and the present plaintiff caused to be erected upon the land occupied by Mr. Cole a wire fence, and sent word to him that they had erected it. This was in the fall, towards the close of the summer season. Mr. Cole went from Biddeford down to the lot, and immediately tore the fence down. The fence as erected was upon land that was covered by the deed of the plaintiff's predecessors in title, and, if extended, would run through the house of the defendant, Mr. Cole, and take off nine feet of his piazza.

There was evidence that the jury were authorized to believe, if they saw fit, that the site of the building next to the conventional

line, so called, had never been disturbed; that in the repair of the house and ell, the sills were placed upon the same foundation that they were upon when he purchased the property, and it was the same foundation placed there by Mr. Cleaves at the time he built the house in 1888. There was also testimony which tended to prove that the barn upon the land that is claimed by the defendant was upon the same foundation next to where he claims there formerly was a stone wall close to the old barn. He is corroborated in his testimony by certain photographs and the testimony of the carpenters who worked there taking down parts of the building, and building the new barn and the ell. It is the claim of the defendant that the iron hub agreed upon is there now, that a post is there at the other end of the line which was placed in the same place that the post was when the line was agreed upon which had rotted down. It is the claim of the plaintiff that the buildings are not upon the same foundation that they were when Mr. Cleaves built the buildings there; but the testimony is not from parties who have knowledge, except from casually passing by, while upon the other hand, the defendant produces the workmen who did the work. There is nothing in the case that contradicts, or can contradict, the fact that for more than twenty-three years after the conventional line as claimed by the defendant was agreed upon, that the defendant and his predecessors in title have occupied the property, that the defendant has not disclaimed, occupied it by buildings all of the time and under the claim of ownership.

The buildings erected by Mr. Cleaves were erected before the line was agreed upon in 1890, by Mr. Brown and Mr. Cleaves, and there can be no question but that from that time to this the owners of the land have continually maintained buildings upon the lot purchased by Mr. Cleaves, and which they claimed includes the part of the land not disclaimed. And the question of course is whether the jury were authorized, from the evidence, to find that the plaintiff and his predecessor have been in open, exclusive, adverse possession under a claim of right for more than twenty years prior to the interruption in 1913 by the building of a fence upon the premises by the plaintiff's authority. The witnesses for the defendant, if their testimony is true, had knowledge of the subject about which they testified, and several of them testified

that the buildings are now in the same place that they were in 1890; that is, upon the side adjoining the land of Mr. Brown, and we cannot say that the jury were not authorized to believe their testimony, and if they were so authorized to believe it, there can be no question but that the land has been occupied adversely, as required by the statute to obtain the title. The jury were authorized to believe their testimony in preference to that of the witnesses for the defense, unless shown to be improbable or incredible, and we have carefully read the record and have failed to discover anything that would authorize us to say that the jury had no right to believe their testimony, and the sole question being a question of fact, the jury having had evidence which they were authorized to believe upon which their verdict can be based, we have no right to disturb it, and the mandate must be,

*Motion overruled.*